Sayre, J.
It is claimed on behalf of' Charlotte. and David James that Terrena was the daughter of Jacob Farmer, and that the property at the death of Terrena was non-ancestral and passed to her husband, Judge W. D. James, and at-his death in 1913 to his children. On the part of the Vulga *376 mores it is claimed that Terrena was the child of Jesse M. Vulgamore, and that the property was ancestral and after the death of Judge James the title returned to the Vulgamore family.
The sole question in the case is: Who was the father of Terrena?
Counsel for Charlotte and David James contend that since Terrena was begotten in lawful wedlock, when her mother, Evaline, was the wife of Jacob Farmer, and as such husband and wife had access to each other in April, 1857, when Terrena was begotten, then by virtue of the rule in Powell v. The State, ex rel., 84 Ohio St., 165, she must be the daughter of Jacob Farmer, and not the daughter of Jesse M. Vulgamore.
Counsel for the Vulgamores contend that since Jesse M. married Evaline when she was big with child, and afterward acknowledged the child as ■his own, she must be his daughter, and not the daughter of Jacob Farmer. Miller v. Anderson, 43 Ohio St., 473.
When it is admitted or shown that husband and wife have access to one another at the time a child is begotten in lawful wedlock, one of the strongest presumptions of law arises that the child is the offspring of the husband. When it is shown that at the time of marriage the mother is big with child, and the husband afterwards acknowledges the child as his own, then an equally strong presumption of law arises that the child is the offspring of the husband. Each of these presumptions is often described as conclusive.
Counsel for both parties to this cause of action confidently rely upon one or the other of these pre *377 sumptions for a decision in their favor. But manifestly they can not both be indulged at the same time if of equal force; for the effect would be a stand-off. They would not move the court toward a decision, but would rather cause it to stand still, and forever prevent a final determination.
It would seem that in' point of time the presumption in regard to a child begotten in lawful wedlock arises first, if at all; because conception precedes birth. Now if this presumption must first be taken into account, and is conclusive, then no evidence could be received to overthrow it, and hence no conflicting presumption could arise to affect it. This would exclude from consideration the •other presumption and would be the end of the case. But it is important to observe under what circumstances these two presumptions arise. When it is said that a child begotten in lawful wedlock is presumed to be the offspring of the then husband of its mother, the presumption is considered to arise only in the ordinary case where the child is born after the death or divorce of the father and without the fact of a second marriage before birth of the child, and without the acknowledgment of the parentage of the child by the husband of a second marriage. When a man marries a woman big with child, and acknowledges the offspring as his own, and the presumption arises that it is his child, it is only in the ordinary case where the woman was unmarried at the time of conception. But in the case under consideration the facts are not’ ordinary, but wholly extraordinary. While Terrena was begotten in lawful wedlock of Jacob Farmer and Evaline Farmer, she was born after *378 her mother was married to another man. A new fact appears which is not found in the ordinary-cases where the presumption of legitimacy arises when a child is begotten in lawful wedlock. So, also, it is true that Jesse M. Vulgamore married Evaline when big with child, and acknowledged Terrena as his offspring, yet when Terrena was begotten her mother was not single, as in the usual case, but was married to another man. Here, too,' a new fact appears which is not found in the cases where the ordinary presumption of legitimacy arises when a man marries an unmarried woman big with child and acknowledges the offspring to be his own.
So the case under' consideration contains facts which are not found in the cases where the two presumptions above referred to are ordinarily indulged b)^ the courts. Since these presumptions are only indulged under certain circumstances, and the case under consideration presents wholly different circumstances, it clearly becomes a question whether the court has a right to indulge either one in the consideration of this case.
We may find an answer to the question by inquiring into the reasons for indulging these presumptions in cases where they properly arise. An examination of the books will disclose that the principal reasons for these presumptions are:
1. For the reason that all presumptions are made use of, to-wit: “When the fact itself can not itself be demonstratively evinced, that which comes nearest to the proof of the fact is the proof of such circumstancés which either necessarily, or usually, attend such facts.” 3 Bl. Com., 371.
*379 2. For t'he benefit of the offspring — to avoid bastardizing the issue.
Now let us apply the reasons for these presumptions to the facts in the case under consideration and see the result. To restate the first presumption it is as follows: When a child is begotten in lawful wedlock it is presumed to be the offspring of the husband of the mother because the offspring of a married woman is ordinarily the child of her husband. The father of Terrena is the fact that can not be demonstrated. But when proof is admitted that Jacob -Farmer was the husband of Evaline when Terrena was begotten, that is proof that he is the father of Terrena, because the fact usually attending the birth of the child of married people is that the husband is the father. But when we consider the facts in this case we must consider all of them. While it is true that when a child is begotten in lawful wedlock it is presumed to be the offspring of the husband of the mother, because this is the usual and ordinary fact, yet can it be said to be the usual and ordinary fact where the mother before the birth of the child marries another man, who had access to her when the child was begotten and marries her when big with child and acknowledges the child as his own ? These facts are very unusual and extraordinary, and no one can say under these circumstances that the husband of the first marriage is ordinarily and usually the father. So, also, as to the second presumption, while it is true that when a man marries a woman big with child and acknowledges the child as his offspring the presumption arises that it is his because it ordinarily and usually is, yet can *380 it be said to be the ordinary and usual fact when the same child was begotten at the time the mother was the wife of another man who had access to her at the time of conception? Certainly no one will pretend that it is the usual and ordinary fact.
Further, as stated above, these particular presumptions are made use of by the-courts especially to avoid judgments declaring the offspring of married people bastards. But such a doctrine is wholly out of place in this case. We are told in Powell v. The State, ex rel, supra, at page 168, that “the common law definition of bastard is one that is begotten and born out of lawful matrimony,” but Terrena was both begotten and born in lawful matrimony. If she is not adjudged to be the legitimate child of Jacob Farmer she must be adjudged the legitimate child of Jesse M. Vulgamore. So it seems clear, in view of the facts in the case, that neither of these presumptions arises in the case under consideration, because the reasons for its being called into operation are absent. The court is then left to a determination of the facts in issue without the presence of either of these presumptions.
We have taken into consideration the affidavit of Evaline, filed in her divorce proceeding, and we find it of substantially no value in the case. We are asked to consider it by the parties who hold to the theory that Terrena was a Vulgamore. Viewed from that standpoint the divorce proceeding was a fraud. Evaline Farmer represented to the court that she was a virtuous woman, and ■ on the theory that Terrena was a Vulgamore she imposed on the court because she was an adulteress and at *381 the time of the divorce trial was, heavy with child by a man not her husband.
We have also considered the statement of the witness Adams to the effect that Evaline told him Terrena was the child of Farmer. But we do not attach any importance to that, as it is not to be expected that a woman will make admissions which convict her of adultery.
There are a few outstanding facts, some of which are beyond dispute, which are decisive of this case. Jesse M. Vulgamore had opportunity for sexual intercourse with Evaline Farmer in April, 1857, when Terrena was begotten. It is probable that though Jacob Farmer was in the neighborhood he and Evaline were living separate and apart. Jesse M. Vulgamore was Evaline Farmer’s lover in April, 1857, and he frequently visited her about that time. He married her when she was big with child and acknowledged Terrena as his daughter. He believed she was his daughter. Terrena believed so during all her life. The next of kin of Jesse M. Vulgamore believed so. There was some testimony that her parentage was disputed. Naturally, under the circumstances, it would be. The fact that it was disputed, and yet when the property of John M. was distributed members of the family allowed Terrena to participate in the distribution without a legal contest, is strong evidence of the fact that they believed she was a Vulgamore, for the court has no doubt they would have contested her right at law if they sincerely doubted that she was the child of Jesse M. Now since Jesse and his next of kin, who weré in a position to know all the facts, believed Jesse was *382 the father, and Terrena herself believed so all her life, we come, without hesitation, to the conclusion that Terrena was the daughter of Jesse M. Vulgamore, and that the property devised by him to her was ancestral, and that the defendants, Charlotte and David James, have no interest therein.

Decree accordingly.

Walters and Merriman, JJ., concur.